**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA
450 Fifth Street, NW
Washington, D.C. 20530;

    *Plaintiff,*

    v.

EDWARDS LIFESCIENCES CORP.,
One Edwards Way
Irvine, California 92614

    and

GENESIS MEDTECH GROUP LIMITED
16 Science Park Drive #04-03
DNV Technology Centre
Singapore 118227

    *Defendants*.

**COMPLAINT FOR CIVIL PENALTIES AND OTHER EQUITABLE RELIEF FOR
FAILURE TO COMPLY WITH THE PREMERGER NOTIFICATION AND WAITING
REQUIREMENTS OF THE HART-SCOTT RODINO ACT**

1.      On July 22, 2024, Edwards Lifesciences Corp. ("Edwards") acquired JC Medical, Inc. ("JC Medical") from Genesis MedTech Group Limited ("Genesis") for $115 million and future milestone payments with an ostensible value of approximately $1.8 million. Contemporaneously, Edwards committed to making an investment in Genesis of $25 million. If aggregated, these payments would have exceeded the then-HSR reporting threshold of $119.5 million. But by viewing the payments as independent, Edwards acquired JC Medical without complying with the notification and waiting period requirements of the Hart-Scott-Rodino

1

Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"). JC Medical was in clinical trials for a promising new treatment for severe aortic regurgitation, transcatheter aortic valve replacement for aortic regurgitation ("TAVR-AR"). By not filing HSR, Edwards and Genesis immediately closed the transaction. They also did not publicly announce the deal at that time. The day after closing the JC Medical acquisition, Edwards entered into an agreement to purchase JC Medical's only competitor, JenaValve Technology, Inc. ("JenaValve"), thereby seeking to own "the only two companies in the United States with TAVR-AR devices in clinical trials." Memorandum Opinion at 1, Federal Trade Commission v. Edwards Lifesciences Corp./JenaValve Technology, Civil Action No. 1:25-cv-02569-RC (D.D.C.) ("FTC v. Edwards"). Because Edwards and Genesis purposefully structured the JC Medical transaction to avoid filing HSR, and the transaction—in substance—was reportable, the United States of America, Plaintiff, by its attorneys, acting under the direction of the Attorney General of the United States and at the request of the Federal Trade Commission, brings this civil antitrust action to obtain monetary relief in the form of civil penalties and other relief against Edwards and Genesis (collectively, "Defendants").

## INTRODUCTION

2.      The HSR Act is an essential part of modern antitrust enforcement. It requires the buyer and the seller of voting securities or assets in excess of a certain value to notify the Federal Trade Commission and the Department of Justice *prior* to consummating the acquisition, and to observe a waiting period after the notification is filed. Advance notification of significant transactions, and adherence to the waiting period, are the essential elements of the Act, providing the federal antitrust agencies with an opportunity to investigate and, when necessary, to seek an

2

injunction to prevent the consummation of anticompetitive acquisitions.

3.     Edwards and Genesis were determined to avoid HSR review for Edwards' acquisition of JC Medical.

4.     Edwards was concerned that HSR review would significantly delay closing on the acquisition of JC Medical, especially in light of its concurrent negotiations to acquire JenaValve. On the other hand, keeping the transaction value below the HSR threshold was unacceptable to Genesis.

5.     Edwards and Genesis therefore agreed that Edwards would pay $115 million for JC Medical, just below the minimum size of transaction threshold under HSR of $119.5 million at the time, and make a contemporaneous investment in Genesis itself of $25 million.

6.     Under the HSR Rules, if a transaction or device is entered into for the purpose of avoiding filing under HSR, the transaction or device will be ignored and the filing requirements will be applied to the substance of the transaction.

7.     Defendants had a purpose to avoid filing under HSR by shifting additional consideration for the JC Medical acquisition into a separate, contemporaneous investment in Genesis.

8.     In doing so, Defendants violated the HSR Act's notification and waiting period requirements and have been in violation since July 22, 2024 (when Edwards acquired ownership of JC Medical).

### JURISDICTION AND VENUE

9.     The United States brings this action under Section 7A of the Clayton Act, 15 U.S.C. § 18a, to recover civil penalties for the violation of the HSR Act.

3

10. This Court has jurisdiction over the subject matter of this action under Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

11. The Defendants are engaged in—and their activities described herein substantially affected—interstate commerce.

12. The Defendants have consented to personal jurisdiction and venue in the District of Columbia for purposes of this action.

## THE DEFENDANTS

13. Defendant Edwards is a Delaware corporation with its principal office and place of business at One Edwards Way, Irvine, CA 92614.  As of July 22, 2024, Edwards owns JC Medical, a corporation organized under the laws of Nevada, with its principal office and place of business at 1580 Gilbreth Rd., Burlingame, CA 94010.

14. Defendant Genesis is a corporation organized under the laws of Singapore, with its principal office and place of business at 16 Science Park Drive #04-03, DNV Technology Centre, Singapore 118227.

## I.  BACKGROUND

**A.    The Hart-Scott-Rodino Antitrust Improvements Act and Rules**

15. The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired both to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions.  *See* 15 U.S.C. § 18a(a). These notification and waiting period requirements apply to acquisitions that meet the HSR Act's dollar-value thresholds, which are adjusted annually.  At all times relevant to this complaint, the HSR Act's notification and waiting period requirements applied to qualifying

4

transactions valued at \$119.5 million or more.  *Revised Jurisdictional Thresholds for Section 7A of the Clayton Act*, 89 Fed. Reg. 7708 (2024).

16.     Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), the Federal Trade Commission promulgated rules to carry out the purpose of the HSR Act.  16 C.F.R. §§ 801-803 ("HSR Rules").

17.     Parties may not structure transactions for the purpose of avoiding the HSR Act. Section 801.90 of the HSR Rules, 16 C.F.R. § 801.90, provides that "[a]ny transaction(s) or other device(s) entered into or employed for the purpose of avoiding the obligation to comply with the requirements of the act shall be disregarded, and the obligation to comply shall be determined by applying the act and these rules to the substance of the transaction."

18.     Section 801.10(a)(2) of the HSR Rules, 16 C.F.R. § 801.10(a)(2), provides that where voting securities are not traded on a national exchange, if the acquisition price has been determined, the value is the acquisition price, but if the acquisition price has not been determined, the value is the fair market value.

19.     Section 801.10(c)(2) of the HSR Rules, 16 C.F.R. § 801.10(c)(2), provides that the acquisition price includes all consideration for the voting securities.  Section 801.10(c)(3) of the HSR Rules, 16 C.F.R. § 801.10(c)(3), provides that the fair market value is determined in good faith by the acquiring person.

20.     In summary, under the HSR Rule 16 C.F.R. 801.90, (a) if parties structure a transaction "for the purpose of avoiding" the HSR Act's requirements, then determining whether an HSR notification should have been filed is based on an analysis of the "substance of the transaction," as opposed to the form of the avoidance scheme; and (b) carrying out this

notification analysis requires determining the full value of the consideration paid for the voting securities being acquired, no matter what form that consideration takes.

**B.      The Transactions Between Edwards and Genesis**

21.      In early 2024, Edwards began negotiations to acquire JC Medical from Genesis.

22.      Shortly thereafter, in April 2024, Edwards and Genesis began discussing the possibility of Edwards making an investment in Genesis in addition to acquiring JC Medical.  At that time, Edwards began indicating its interest in intentionally keeping the acquisition price below the HSR threshold of $119.5 million.

23.      On July 22, 2024, Edwards agreed to acquire JC Medical for $115 million. Edwards completed the acquisition of JC Medical that same day.

24.      On August 9, 2024, Edwards acquired non-voting shares in Genesis for $25 million.

## II.  EDWARDS AND GENESIS HAD A PURPOSE TO AVOID FILING UNDER THE HSR ACT AND THE SUBSTANCE OF THE TRANSACTION WAS REPORTABLE UNDER THE HSR ACT

**A.      Edwards and Genesis' HSR Avoidance Scheme**

25      In early 2024, when Edwards began its negotiations with Genesis to acquire JC Medical, Edwards became concerned that HSR review would significantly delay the transaction.

26.      At the same time, unbeknownst to JC Medical and Genesis, Edwards was negotiating to acquire JenaValve.  Because JC Medical and JenaValve were the only two companies conducting clinical trials for a TAVR-AR device in the United States, the acquisition of both raised antitrust concerns that could have led both transactions to be investigated by the FTC, delaying both transactions.

27.     Documents and testimony show that for these reasons, Edwards wanted to avoid filing under HSR for the JC Medical acquisition by keeping the price below the $119.5 million threshold.

28.     However, Genesis valued JC Medical from $125-150 million and was unwilling to accept an offer below the HSR filing threshold.

29.     Thus, in April 2024, JC Medical proposed that, in addition to Edwards paying $115 million plus milestone payments for the voting securities of JC Medical, Edwards would make an investment of $10-35 million in Genesis to close the gap.

30.     On April 27, 2024, JC Medical sent two term sheets to Edwards: one for JC Medical and one for the Genesis investment.  The transmittal email made clear that both were part of a single transaction and stated that the Genesis investment would be concurrent with the closing of the JC Medical acquisition.

31.     Documents and testimony show that Edwards and Genesis considered the Genesis investment part of the deal but did not count it for HSR purposes.

32.     Edwards told JenaValve that there was no HSR review for the JC Medical acquisition because it was "below the threshold! Intentional[.]"

**B.     The Substance of the Transaction Was an Acquisition Above the HSR Threshold**

33.     Edwards and Genesis intended the Genesis investment to be additional compensation to Genesis for the sale of JC Medical to Edwards and it was "within the deal structure."

34.     A sufficient part of the $25 million Genesis investment is attributable to additional compensation for JC Medical such that, when added to the $115 million direct

7

payment, the total price paid for the acquisition of JC Medical was above the HSR filing threshold of $119.5 million.

35.     The substance of the transactions between Edwards and Genesis was subject to the HSR filing requirements.

36.     Edwards and Genesis did not file an HSR notification and did not observe the required waiting period of the HSR Act before consummating the acquisition of JC Medical by Edwards from Genesis on July 22, 2024.

## **VIOLATION ALLEGED**

37.     Plaintiff alleges and incorporates paragraphs 1 through 36 as if set forth fully herein.

38.     Edwards' acquisition of JC Medical from Genesis on July 22, 2024, was subject to the notification and waiting period requirements of the HSR Act and the regulations promulgated thereunder. 16 C.F.R. § 800 *et seq.*

39.     Defendants did not comply with the notification and waiting period requirements of the HSR Act and regulations.

40.     The Defendants were each in violation of the HSR Act each day during the period beginning on July 22, 2024, through the date of this complaint.

41.     Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation.  The maximum amount of civil penalty is $53,088 per day, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701

(further amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 90 FR 5580 (Jan. 17, 2025).

## **REQUEST FOR RELIEF**

Wherefore, the Plaintiff requests:

1. That the Court adjudge and decree that Defendants violated the HSR Act, 15 U.S.C. § 18a, and that Defendants were in violation of the Act on each day of the period from July 22, 2024, through the filing of this complaint;

2. That the Court order each Defendant to pay to the United States an appropriate civil penalty as provided by the HSR Act, 15 U.S.C. § 18a(g)(1), the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 90 FR 5580 (Jan. 17, 2025);

3. That the Court issue an appropriate injunction against Defendant Edwards; and

4. That the Court order such other and further relief as the Court may deem just and proper.

Dated:  July 13, 2026

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**:


        /s/ Stanley E. Woodward, Jr.              /s/ Jennifer Lee
STANLEY E. WOODWARD, JR.          MARIBETH PETRIZZI (DC Bar #435204)
(D.C. Bar # 997320)                       JAMIE R. TOWEY (DC Bar #475969)
Assistant Attorney General             KENNETH A. LIBBY
                                                    JENNIFER LEE
United States Department of Justice    ANGELIKE MINA
Antitrust Division                        DANIELLE SIMS (DC Bar #982506)
950 Pennsylvania Ave, N.W.          Special Attorneys by appointment
Washington, D.C. 20530               Federal Trade Commission
Telephone: (202) 514-2000           Bureau of Competition
Facsimile: (202) 616-2645

                                                    Washington, D.C. 20580
                                                    Telephone: (202) 326-2246
                                                    Email:  jlee@ftc.gov